[No. 3127.  Feb. 11, 1926.]

ASPLUND v. CITY OF SANTA FE et al.

[244 Pac. 1067.]

SYLLABUS BY THE COURT

A franchise to maintain and operate an existing water plant and to make additions, extensions, and betterments thereto, may be granted by ordinance by a city without a referendum to the people.

BICKLEY, J., dissenting.

Appeal from District Court, Santa Fe County; Holloman, Judge.

---

[1] 21CJ p. 819 n. 37: 28Cyc p. 352 n. 48 New.

Suit for injunction by R. F. Asplund against the City of Santa Fe and others. Judgment for defendants, and plaintiff appeals. Affirmed.

H. S. Bowman and Miguel A. Otero, Jr., both of Santa Fe, for appellant.

J. J. Kenney, of Santa Fe, for appellees.

Francis C. Wilson, C. J. Roberts and Carl H. Gilbert, all of Santa Fe, amici curae.

### OPINION OF THE COURT

PARKER, C. J.  The city council of the city of Santa Fe was about to grant a franchise for the erection and operation of a waterworks system and an electric light and power plant when this action was brought to enjoin such action upon the theory that, before such franchise could be granted, the question must first be submitted to a vote of the people, which had not been done.  The city council demurred to the complaint upon the ground that there existed no such requirement, and, consequently, the injunction could not be maintained.  The court sustained the demurrer, and, the plaintiff electing not to plead further, the court dismissed the complaint, from which judgment the case is here on appeal.

It is apparent that the question involved is a very narrow one and turns upon a proper interpretation of the statutes.  The first statute on the subject is chapter 39, Laws of 1884. Subsection 67 of that act is as follows:

"They shall have power to erect waterworks, or gas works, or authorize the erection of the same by others; but no such works shall be erected or authorized until a majority of the voters of the city or town, voting on the question at a general or special election, by vote approve the same.' '

This section is carried forward as subsection 68 of section 3564, Code 1915.

It is argued in behalf of appellees that this section applies only to waterworks constructed by or for the

city as a municipal enterprise, and does not include
franchises for private enterprises for such purposes.
We deem the argument faulty. This section is the only
one in the act granting the power to construct or au-
thorize the construction of waterworks..If it does not
include private enterprises, then there is no authority
to grant such franchise. This could not have been the
intent of the Leislature for the reason that in subsec-
tion 69 (subdivision 70, of section 3564, Code 1915) it
is provided that in case the right is granted to a pri-
vate concern, the term of the franchise shall not exceed
25 years, and the city may regulate rates to private
consumers, and contract with such private concern for
water for the city for fire protection and other pur-
poses, and may pay the agreed price therefor. This
section does not grant the power to authorize private
concerns to construct waterworks, but merely provides
for the regulation of such concerns by the city. It
thus appears that the Legislature intended subsection
68 to include private enterprises; otherwise subsection
70 would appear to be futile. Such lack of understand-
ing could hardly be attributed to the legislative branch
of the government.

The same consideration controls the interpretation
of subsection 69 of section 3564, Code 1915 (subsection
68 of the Act of 1884). This section provides for the
construction of such waterworks outside the city lim-
its, and does not in terms require a vote of the people.
But subsection 68, Code 1915, is a general provision
as to a vote of the people in all cases where erection
or construction is to be resorted to, either without or
within the city limits. The decision of the district
court was therefore doubtful upon the pleadings before
him, as appears from the transcript.

The scope of the iniquity here, however, has been
somewhat enlarged by the submission to the court by
stipulation of the parties of a copy of the proposed
ordinance granting the franchise. An examination of
the franchise discloses that it is not a franchise to
erect or construct waterworks, but it is a franchise

to operate and maintain a waterworks system. It contains recitals that in 1880 the board of county commissioners of Santa Fe county granted to the Santa Fe Water & Improvement Company, a predecessor in title to the grantee of the present franchise, a right of way for the construction, maintenance, and operation of a water and light system in the territory now occupied by the city of Santa Fe; that the city of Santa Fe in 1893, by ordinance, granted to the predecessor in title of the present grantee a franchise to supply the city with water for the period of 25 years, which franchise expired January 18, 1918; that it is now the desire of the city to provide for additions and betterments to the existing water system, and to provide for the storage and impounding of sufficient water to afford an adequate supply for the city and its inhabitants; that the grantee of this franchise is willing to continue the operation of the present plant and to make betterments and improvements later in the franchise specified, provided he is granted the right to operate and maintain said system for 25 years; and that the grantee has acquired by purchase all of the property rights and franchises of the Santa Fe Water & Light Company, and its predecessors, and the city is willing to grant said grantee, his successors and assigns, a franchise for the construction, maintenance and operation of a system of waterworks for the collection and storage and distribution of water. Then follows the granting clause of the ordinance. Section 1 of the ordinance is as follows:

"That there is hereby granted for the term and period of 25 years from and after the date of this ordinance to the said John Davis Bowles, his successors and assigns, hereinafter called the grantee, the right, privilege and franchise to construct, maintain and operate in the city of Santa Fe, as now and hereafter constituted, a system of works for the collection, storage and distribution of 'water for the purpose of furnishing and supplying to the said city and its inhabitants water for domestic, irrigation, industrial and sanitary purposes, and for fire protection and other useful purposes."

Section 3 of the ordinance provides that the grantee, his successors and assigns, shall have the right during

the term and period aforesaid, and subject to the limitations and conditions in said ordinance provided, to enter upon the streets for the purpose of constructing, maintaining, and operating his or their system of water pipes, conduits, and works with the improvements and additions thereto, and to maintain the same.

Section 6 provides that in the event that during the life of the franchise the grantee, his sucessors and assigns, should desire to construct, operate, and maintain one or more equalizing or supplemental reservoirs within the corporate limits of said city, he or they must apply to the city council for the right and authority so to do.

Section 7 provides that the existing pipe lines and water mains shall be maintained in good working order and extended, improved, and enlarged from time to time, as contemplated herein and as the needs of the city may require.

Section 8 provides that in consideration of the granting of said franchise, the grantee himself and his successors and assigns agree and covenant to build and construct a reservoir, or series of reservoirs, between the present storage reservoir and the upper reaches of the Santa Fe river, which will be adequate to supply, in conjunction with the existing reservoirs, sufficient water for a city of 10,000 people; such reservoir or reservoirs to be complete in every respect, with a system of channels, conduits, pipe lines, and other equipment for the distribution of water thereby collected to the city and its inhabitants.

Section 11 requires that the city shall pay an annual rental of $35 each for not less than 80 fire and sprinkling hydrants as now existing, or as may be required by order of the city council. The ordinance provides further for the regulation of rates and contains provisions concerning forfeiture of the franchise.

It thus appears that this is not a franchise for the erection or construction of a water plant, but is a

franchise for the operation of a plant already in existence, with provisions for betterments, additions, and extensions. There is no grant of a franchise to construct storage reservoirs outside the city limits. The grantee merely covenants that he will construct such reservoir or reservoirs and augment the present supply of water. The question then is: Has the city power to grant by ordinance a franchise to maintain and operate an existing water plant in the city?

By subsection 90 of section 3564, Code 1915 (section 6 of chapter 46, Laws 1893), it is provided:

"All towns and villages shall have power to grant, by ordinances, franchises and privileges for street car lines, waterworks, lighting purposes and other public conveniences and comforts, for the furnishing of which such franchises and privileges are necessary."

By subsection 67 of the same section (section 1 of chapter 70, Laws 1897) it is provided:

"Any incorporated city, town or village in this state having a population of at least 1,000, * * * shall have all powers given by law to incorporated towns. * * *"

We deem this legislation as granting a different power from that granted by subsections 68, 69, and 70. If it is not a different power, then it was a useless piece of legislation, for the power was already granted in the above subsections. The only subject-matter to which it can apply, so far as waterworks are concerned, is the maintenance and operation of a plant alreday erected and installed. It requires no referendum to the people. There is reason for this distinction. A public utility already installed and capable of sufficient service, under regulation by the city, satisfactory to the people and the city council, may well be continued for an additional period upon the same terms as before. Not so when a new plant is to be installed. In that case the people are interested in the kind of installation to be made, the quality and amount of supply of water, and the ability of the concern to carry out its undertakings. No doubt other considerations may enter into the proposition. And so the Legislature

has provided for a vote of the people in such case. But not so when the question is whether a franchise is to be granted to operate, improve, extend, and maintain a plant already installed.

This interpretation harmonizes these statutes, leaving all of the sections in force. They are to the effect that in all cases a referendum to the people must be had where a waterworks is to be erected; when a franchise is to be granted to maintain and operate an existting plant, no referendum is requried.

It follows that the judgment of the district court was correct and should be affirmed, and the cause remanded with directions to proceed accordingly, and it is so ordered.

WATSON, J. (concurring specially). I concur in the result arrived at by the CHIEF JUSTICE. Unable to agree with the reasoning of either of the other opinions herein, it is necessary that I state my views.

We are asked to restrain the city council from granting a waterworks franchise. The sole claim of right to injunctive relief is that under subsection 68 of section 3564, Code of 1915 (subsection 67, § 14, c. 39, Laws of 1884), such franchise cannot be granted without approval by popular vote.

Among other contentions, counsel for appellees and amici curiae urge that said subsection 68, and particularly the requirement of a popular vote contained therein, has no reference nor application to a proposed grant of a franchise to a public utility corporation, either to erect, or to erect and operate, waterworks; and that said subsection and its restriction apply only in case the city proposes to erect, or authorize the erection of, a plant for its own use and operation. This contention, in my judgment, is based upon correct construction, and should be sustained.

If subsection 68 dealt only with waterworks, I confess that its meaning, when read in connection with other provisions, would be, to say the least, doubtful.

The other provisions to which I refer are subsection 69 of the Act of 1884 (subsection 70, Code of 1915) and subsection 71 of the Act of 1884, not compiled in 1915, but appearing as subsection 72 of section 2402 of the Compiled Laws of 1897. The former section assumes the existence of a power in cities to grant franchises to private individuals or incorporated companies to build and operate water and gas works, and to contract with them for a water and gas supply for the public needs of the city. The latter provision assumes the existence of the right to grant franchises to private individuals or incorporated companies to build, maintain and operate such works, and to make such contracts.

Subsection 68 does not, however, deal with water-works alone. It deals in exactly the same terms with gas works. But subsection seventh-VII of said section 3564, Code of 1915, confers upon the city council and board of trustees in towns power "to regulate the opening therein [streets, alleys, avenues, sidewalks, parks and public grounds] for the laying out of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights: Provided, however, that any company organized for the purpose of manufacturing illuminating gas to supply cities or towns or the inhabitants thereof with the same, shall have the right by consent of the city council or town trustees, but not without such consent (subject to existing rights), to erect gas factories and lay down pipes in the streets or alleys of any city or town in the state, subject to such regulations as any such city or town may by ordinance impose." This subsection, as well as all other provisions of the original act, must be considered in arriving at the true meaning of sub-section 68.

Under subsection seventh-VII the Legislature granted, to any company organized for the purpose, the right to erect gas factories and lay down pipes in the streets and alleys of any city in this state. The only limitation upon that right is that it shall be by, and not without, the consent of the city council, and subject to such

regulations as such city may, by ordinance, impose. This, to my mind, constitutes a complete legislative grant of power to the city, acting by ordinance passed by its council, to grant a private franchise for the erection and operation of gas works and the use of the streets and alleys of the city for the purposes thereof.

Subsection 68, by its terms, has nothing to do with the granting of franchises. It grants authority to the city only to erect its own gas or water works, or authorize their erection. It is this power only which is to be exercised on the condition of an approving vote of the electors. Without importing language or intent, nothing more can be made of it.

Speaking only of gas works, we have, then, two independent powers existing in the municipality. Under subsection seventh-VII, it has the power, through its city council, to grant franchises. By subsection 68, it has the power to erect a municipal plant. For the power to grant franchises, it is not necessary to refer to subsection 68 nor to any other provision of the act of 1884. I do not think it is necessary or permissible to import into this express grant of power any restriction found in other sections, unless the express language or plain meaning of those other sections so requires. The two grants are independent. So are the limitations.

As pointed out, subsection 68 deals with waterworks and gas works in exactly the same language. It must have the same interpretation, whether gas works or waterworks are under consideration. If it refers only to municipal ownership and operation as applied to gas works, it means exactly the same as applied to waterworks.

It is immaterial to the decision of this case whether power can be found anywhere in the act of 1884 to grant franchises for waterworks. It may be that subsections 69 and 71 of that act (subsection 70, Code of 1915, and subsection 72, C. L. 1897) are sufficient to constitute such grant. If lacking, through inadvert-

ence or design, that would not justify us in taking liberties with subsection 68. It is less objectionable, in my view, to impute the power to grant such franchises to subsections 69 and 71 than to subsection 68. But if the power is to be found nowhere in the act, it is immaterial . It has since been granted and now exists. Code 1915, §§ 1048 and 3564, subsecs. 90 and 67.

Subsection 68 refers in terms only to "erection." Subsection 69 uses only the synonymous term "construction." It is just as broad as subsection 68, but no broader. Subsection 69, in my opinion, has reference only to a municipally owned waterworks. A private enterprise would need no municipal grant of authority to construct works outside the city, and. to conduct water to its limits. On the other hand, the authority for a municipality to construct works, and particularly to exercise jurisdiction beyond its limits, must needs be derived from express grant. The powers of erecting waterworks and of exercising jurisdiction beyond the city limits are not original to the act of 1884. Chapter 1 of 1880 was a comprehensive Municipal Code, by section 35, subsec. 23, of which it was provided:

"To construct and establish works for furnishing the city with wholesome water, and for that purpose may go beyond the city limits and exercise full jurisdiction and all necessary powers therefor."

These powers are merely continued, somewhat amplified, and made to apply to gas works, by subsections 68 and 69.

From this viewpoint, it does not seem difficult to harmonize all of the pertinent provisions of the act of 1884, giving to each its proper place and application. Two methods of supplying a municpiality with gas and water were contemplated. Provisions governing municipal ownership and operation are found in subsections 68, 69, 71, 73, 74, 75, and 76. Provisions relating to private ownership and operation are found as to gas works in subsection seventh-VII, and as to both gas and waterworks in subsection 70. Original subsec-

tion 71 (subsection 72, C. L. 1897) relates to both forms of ownership and operation.

If the foregoing is sound, it follows that the trial judge did not err in his action upon the pleadings before him, and that there is nothing in the stipulation filed in this court which requires consideration.

Support for my construction of subsection 68 is found in Pikes Peak Power Co. v. City of Colorado Springs, 105 F. 1, 44 C. C. A. 333, where the court, in an opinion by Judge Sanborn, said that similar language in the Colorado statute "applies only to water-works, gas works, and electric light works purchased or erected by cities, or built for cities, under contracts with them, by other parties." It is suggested that the case was decided on other grounds. I cite it, nevertheless, as the view of that able court as to the meaning of the subsection standing by itself.

It is said that a broader view of subsection 68, or of provisions more or less similar, has been indulged in Raton Waterworks Co. v. Raton, 49 P. 898, 9 N. M. 70; Raton v. Raton Ice Co., 191 P. 516, 26 N. M. 300; Hanson v. Hunter, 48 N. W. 1005, 53 N. W. 84, 86 Iowa, 722; Leadville v. Leadville Sewer Co., 107 P. 803, 47 Colo. 118; and City of Centerville v. Fidelity Trust & Guaranty Co., 118 F. 332, 55 C. C. A. 348. In none of these cases was the question directly involved or passed upon, and in none of them does it appear that the contention was made, as here, that the provision had application only to municipal enterprises. In Raton Waterworks Co. v. Raton, the ordinance in question had, in fact, been submitted to vote. In Raton v. Raton Ice Co., it was said that the sections in question "authorize the construction and operation of waterworks, either by the city or by the granting of permission to private individuals or incorporated companies to build and operate such waterworks." However, no one was in that case disputing that proposition, and, in my opinion, it is not necessarily involved in the case at bar. Subsection 68 was not there especially referred to as

the source of power to grant franchises, nor was the question of submission to popular vote involved. In Hanson v. Hunter, it was said:

"It is not questioned but that the power of municipal corporations to erect or authorize water or gas works is subject to approval by a majority vote."

In Leadville v. Leadville Sewer Co., the expression relied upon is merely an argumentative observation of one of the seven justices, six separate opinions having been delivered. In City of Centerville v. Fidelity Trust & Guaranty Co., a vote of the people had been had; the only question being whether certain changes in the details of the franchise, made by the council after the election, had invalidated it.

If it be a fact, as urged, that city councils have heretofore construed subsection 68 as requiring a referendum of waterworks franchises, it surely is not controlling, and could only be persuasive to resolve a doubt. The same may be said as to the proviso of subsection 68, introduced by amendment in 1909, which is urged as legislative construction. With deference to my associates who reach different conclusions, I am constrained to accept the contention that subsection 68 has no application to the granting of franchises.

Entertaining these views, I concur with the CHIEF JUSTICE in affirming the judgment.

BICKLEY, J. (dissenting). I can readily give my concurrence to the declaration of the CHIEF JUSTICE that subsections 68, 69 and 70, § 3564, Code 1915, affords power to cities and towns to grant franchises to individuals and incorporated companies to erect, maintain, and operate waterworks. I reach this conclusion because, in my opinion:

(1) The language itself, independent of any extraneous aids, bears that construction;

(2) Contemporary construction of municipal officers and private utility corporations and legislative construction;

(3) The construction of courts of New Mexico and other states having similar statute;

(4) The construction of the parties to the contract under construction.

It has been the practice of municipalities granting franchises to waterworks companies to secure the approving vote of the electors. While I am confident that such has been the general and uniform practice, I am unable to point to but one case which has been discussed in the reports of our decisions. In the cases of Raton Waterworks Co. v. Raton, 49 P. 898, 9 N. M. 70, the franchise ordinance is set out in part. The court said (49 P. 899, 9 N. M. at page 75):

"The foregoing ordinance was ratified by the qualified electors of the defendant corporation as therein provided."

The preamble to the franchise ordinance in the case at bar indicates that the franchise under which the water improvement company, the successor to the Santa Fe Water & Improvement Company and the predecessor in title of the grantees therein, was granted a franchise for the term of 25 years by the city of Santa Fe by virtue of subsection 68 of section 3564 of the Code as amended by chapter 81, Laws of 1909, without an election; the amendment apparently under the recitals in the preamble to the franchise dispensing with an election.

The power to grant that franchise could not have been by virtue of chapter 46 of the Laws of 1893, because it was granted prior thereto, to-wit, on January 18, 1893. Unless the recitals of the preamble are meaningless, it seems the power must have been drawn from subsection 68 as amended by the Laws of 1909. The amendatory act was entitled, "An act amending subsection sixty-eight of section 2402 of the Complied Laws of New Mexico of 1897 relative to powers of the city council in cities and boards of trustees in incorporated towns and villages," and section 1 thereof is as follows:

"Section 1. That subsection 68 of section 2402 of the Compiled Laws of New Mexico of 1897, be and the same is here-

by amended by adding thereto the following: Provided, that whenever or wherever, previous to the incorporation of any city, town or village in this territory, the board of county commissioners of the county in which any such city, town or village shall be located shall have granted to any person, firm or corporation right of way over, upon, in and about the streets, alleys and highways of any such city, town or village for the erection, construction, maintenance or operation of waterworks, gas works, electric light works or power systems, and such person, firm or corporation shall have erected or constructed or in good faith commenced the erection or construction of such works or system, no election shall be necessary in order to confer authority upon any such city council, or board of trustees, to authorize the completion of any such works or system and the continued or subsequent operation and maintenance thereof, but the city council or board of trustees of any such city, town or village shall recognize the rights so theretofore acquired of any such person, firm or corporation and shall grant any such person, firm or corporation a franchise for the maximum term of years authorized by law, upon such terms as are fair, just and equitable to all parties concerned, and pending the granting of any such franchise, no such person, firm or corporation shall be interfered with in the free exercise and enjoyment of its rights acquired under and by virtue of the right of way theretofore granted as aforesaid by the board of county commissioners of any such county."

As the proviso to subsection 68 was evidently enacted, not for the benefit of cities' and towns, but for the benefit of individuals and incorporated companies occupying the streets of cities and towns with water and gas works and operating such works therein, I think that such amendment is entitled to great weight as an element in construing the meaning of that and attending sections. It is stated in Joyce on Franchises, §.262:

"It is also a familiar rule of interpretation that in the case of a doubtful or ambiguous law the contemporaneous construction of those charged with its execution, especially when it has long prevailed, is entitled to great weight. * * * The doctrine of contemporaneous legislative construction will also be considered in cases of doubt."

And again at section 265:

"Statutes are in pari materia which relate to the same thing or general subject matter whether passed by the same Legislature, or about the same time, or whenever passed, and even though they do not refer to each other, are to be construed together as one system in order to determine the legislative purpose and arrive at the true intent. * * * And if it can be gathered from a subsequent statute in pari materia what meaning the Legislature attached to the words of

a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.''

In the case of Raton v. Raton Ice Co., 191 P. 516, 26 N. M. 300, we said, in referring to the Municipal Code:

"The first act on the subject is chapter 39, Laws of 1884, entitled 'An act to incorporate cities and towns.' Sections 14 of this act gives to the city council and boards of trustees in towns certain powers, and subsections 68, 69, and 70 of this act authorize the construction and operation of waterworks, either by the city or by the granting of permission to private individuals or incorporated companies to build nad operate such waterworks."

Appellants claim that the phrase in subsection 68, ''or authorize the erection of the same by others,'' means that the city may make a contract with others to erect a waterworks or gas works for the city to be operated by the city, and Justice Watson's opinion adopts that construction. But the contrary construction seems so natural that we used the language above quoted in the Raton Case.

If the city is going to authorize some one to erect a waterworks for it by contract, the works when erected to be operated by the city itself, it seems that ''authorize'' would be used in the sense of ''employ'' or ''engage'' and not in the sense of ''permit.'' Note our declaraton in the Raton Case, ''or by granting permission to private individuals or incorporated companies to build and operate such waterworks.'' A permit to others to operate is inconsistent with the idea of the city authorizing the building by others of the works for the city to be operated by the city.

In the case of Hanson v. Hunter, 48 N. W. 1005, 86 Iowa, 722, at page 726, the court was dealing, as appears by the opinion, with section 471 as amended, and 472, 473, 474, and 475 of the Revised Code of Iowa (1885). A comparison of these sections with our own act of 1884 shows that the above sections of the Iowa statute are essentially the same as our subsections 67, 68, 69, 70, and 71 of section 14 of chapter 39 of the Act of 1884. The court said:

"Section 471, as amended, is as follows: 'They shall have power to erect waterworks, or to establish and maintain gas works, or electric light plants, with all the necessary poles, wires, burners, and other requisites of said gas works or electric light plants, or to authorize the erection of the same; but no such works shall be erected or authorized until a majority of the voters of the city or town, at a general or special election, by vote, approve the same.' Sec. 464 confers power 'to light streets and alleys,' etc.

"The appellee contends that, under this authority, the city had power to pass the ordinance without a vote; that it and the contracts are simply an arrangement for lighting streets, and not within the provisions or restrictions of section 471. That a city may provide for lighting its streets under the authority of section 464, when the erection or authorizing the erection of gas works or electric light plants is not involved, may be true; but this we do not determine, as the ordinance clearly authorizes the erection of an electric light plant, and therefore comes under section 471. It grants a franchise to occupy the streets and alleys with poles and wires, for the purpose of distributing electricity to consumers, all of which enters into and goes to make up the electric light plant. It is very different from an arrangement for lighting streets, which does not require works, nor such occupation of the streets. This ordinance goes quite beyond a mere contract or arrangement for lighting streets. It confers on Mr. Hunter, his successor and assigns, for a long term of years, a franchise and easement in the streets and alleys of the town. It contemplates more than the lighting of the streets. It is for the distribution of electricity to private consumers, and quite identical with the franchise usually granted to gas and other light companies. * * *

"Without the restrictions of section 471, the authorities of municipal corporations would have the power to erect or authorize waterworks, gas works, and electric light plants, without restriction, and without regard to the wish of the voters. The evident purpose of section 471 is to restrict the exercise of this power. It is not questioned but that the power of municipal corporations to erect or authorize water or gas works is subject to approval by majority vote.

Subsections 67, 68, 69, 70, and 71 of section 13 of the Municipal Code of Colorado, appearing as section 6525 of Colorado Stat. Ann. 1912, are essentially the same as our subsections 67, 68, 69, 70, and 71 of section 14, c. 39, Laws of 1884.

In the case of City of Leadville v. Leadville Sewer Co., 107 P. 803, 47 Colo. 118, it was contended that the sewer company had the right to operate a sewer system and charge for the service in the city of Leadville, and this power was questioned by the city in legal pro-

ceedings, and in the course of the discussion subdivision 7 of subsection 7 of section 13, which is substantially the same as subdivision 7 of subsection 7 of section 14 of chapter 39 of our Laws of 1884, was discussed, as was also subsections 67 and 69, which are, as heretofore seen, substantially the same as our subsections 67 and 69. Mr. Justice Musser in his concurring opinion (107 P. 808, 47 Colo. at page 142) said:

"Subdivision 7 of the same section provides that a municipality shall have power to regulate the openings in its streets for the laying out of gas or water mains, and the piping, building and repairing of sewers, tunnels and drains, and erecting gas lights. This is immediately followed by a provision that private individuals may have the right, with the consent of the city council or town trustees to erect gas factories, and lay down pipes in the streets or alleys in the city or town. The grant of this privilege to gas companies alone, in this section, excludes the granting of it for sewers. The sixtieth subdivision of the same section. in 3 Mills' Rev. Sup., gives the power to permit steam or street railroads to operate its cars in the city upon consent of the owners of one-half of the frontage. Subdivisions 67 and 69, 3 Mills', gives the power to grant to private individuals or corporations, the right to build and operate water, gas, or electric light works and to charge and collect for water, gas or electric light. Nowhere in the stautes can be found any warrant of law for a city or town to grant to a sewer company the right to construct and operate a sewer system and to charge and collect for the use thereof."

These expressions of our own court and of the Iowa and Colorado Supreme Court indicate satisfactorily to my mind that the language of subsections 67, 68, 69, 70, and 71 plainly import powers in municipalities to grant to individuals and corporations a franchise to erect, operate, and maintain waterworks, and that the language of those sections is not limited to the conferring of a right in the municipalities to engage themselves in such enterprise.

In Mr. Justice Watson's opinion, he expressed the view that subsection 69 refers to municipally owned waterworks, and that a private concern would seem to require no municipal authority to erect and operate works outside the boundaries of the city. The other construction is not without reason. A franchise power must be drawn from some source, and such grants of

franchise are a legislative function, but the Legislature may delegate the power to make such grants to municipalities, and in this subsection they seem to have done so. Under said subsection 69, cities have power to "authorize the construction of such works, without their limits." At any rate, the parties to the contract in question have construed this subsection to mean that the city had the power to exercise some supervisory control over the portion of the works of the grantee which is to be constructed and maintained without the limits of the city.

In the franchise ordinance appears the following clause:

"That the city shall pass all necessary ordinances for the protection of the property of the grantee, his successors and assigns described herein, from malice or negligence and to protect the water supply from pollution."

It is difficult to conceive where such a power to pass ordinances for the protection of the water supply from pollution comes from if not from this subsection. The section would seem to confer jursidiction in the city over the territory occupied by the works, reservoirs, streams, trenches, pipes, and drains used in and necessary for the construction, operation, and maintenance of the same, and over the stream or source from which the water is taken for five miles above the point from which it is taken, and to enact all ordinances and regulations necessary to carry the power into effect· whether such works are constructed by the city or are authorized to be. constructed and operated by individuals or corporations.

With reference to that portion of Justice Watson's opinion to the effect that the power of cities and towns to grant franchises to gas companies and waterworks companies may be drawn from subdivision 7 of subsection 7 of section 3564 and section 1048, respectively, I observe that in my opinon these acts merely endowed incorporated gas and water companies (organized under appropriate laws) with capacity to receive and exercise franchises from cities and towns and was

not intended as a grant of power to cities and towns. See Andrews v. National Foundry & Pipe Works, 61 F. 782, 10 C. C. A. 60. It will be noted that those enactments refer to companies alone.

"In some states, however, authority of cities to confer power to engage in businesses of a public nature has been restricted to corporations, and these domestic corporations only. The power to grant franchises to such corporations is held to exclude the power to grant the same to an individual in keeping with the maxim 'expression unius,' etc., and the rule that a municipal corporation possesses and can exercise only powers granted by express words, or those necessarily implied in or incident thereto, and that any ambiguity or doubt as to the existence of a power is to be resolved against the corporation." 12 R. C. L. on Franchises, § 18.

Subsections 68, 69, and 70, § 3564, give the power to grant franchises to erect gas works and waterworks to "individuals and incorporated companies." Chapter 13, Laws of 1903, provides:

"Section 1. That whenever the right to build, maintain and operate works for the supplying of water and lights has been or may be granted to individuals or corporations in cities or towns in this territory and any such cities or towns have contracted, or shall contract with such individuals or corporations for supplying water and lights for public or municipal purposes, such city or town may levy each year and cause to be collected a special tax sufficient to pay the amounts so agreed to be paid for the supplying of water or lights, not exceeding the sum of four (4) mills for water and two (2) mills for lights on the dollar for any one year: Provided, that this shall not authorize any increase in the total amount of taxes now authorized to be carried by such cities and towns, but such total taxes for all purposes shall remain as now enacted by law."

I think the language employed is a further legislative recognition of the powers of cities and towns to grant franchises for waterworks under said subsections 68, 69, and 70. This seems such a natural inference that the professional annotators classify it as an amendment of subsection 68.

So far as the case of Pikes Peak Power Co. v. City of Colorado Springs, 105 F. 1, 44 C. C. A. 333, is concerned, I do not regard it as persuasive, although I have great respect for the opinions of Judge Sanborn. Judge Sanborn was doubtless moved by the strong

equities in favor of sustaining the contract which the city of Colorado Springs made with Jackson. In the opinion he says, in response to the argument that the contract was an ordinance requiring the approval of the vote of the electors:

"In the first place, the ordinance does not purport to grant to Jackson, his associates or assigns, the authority to erect electric light works, and therefore a vote of the taxpayers was not required by the statute to authorize its passage. The authority granted by the ordinance is limited to the construction of proper plants for generating electricity by water power, and conduits, wire and poles for the transmission of the electric fluid."

At another place he said:

"There is nothing in the ordinance which requires the grantees to erect or maintain any electric light plant whatever."

Having reached that conclusion, the observation that no election was necessary was dictum merely.

That case was decided November 5, 1900, by Sanborn, Caldwell, and Thayer, Circuit Judges. Later in September, 1902, as judges of the same circuit, Sanborn, Thayer, and Lochren construed the Iowa statute which is in substance the same as Colorado and ours as to the material points to require an election before a franchise could be granted to a waterworks company. The case is the City of Centerville v. Fidelity Trust & Guaranty Co., 118 F. 332, 55 C. C. A. 348. The contract or franchise is set out in part in the statement of facts, and by its terms purported to authorize the Centerville Water Company to erect, operate, and maintain for the period of 25 years a system of waterworks in that city, to supply water to extinguish fires and for the use of the inhabitants, with the usual franchise as to the use of the streets, alleys, roads, bridges, and public ground. Then follow the provisions similar to the franchise in the cases at bar.. The court said:

"The contract entered into between the city of Centerville and the Centerville Water Company, authorizing the water company to construct the waterworks, and granting it the rights and franchises expressed in ordinance 207, as amended by ordinance 208, was valid; as was also the agreement there-

in of the city in respect to the payment of hydrant rentals. Municipal corporations were authorized to make such contracts when 'a majority of the voters of the city or town. at a general or special election by vote, approve the same.' McClain's Code, Iowa, § 639. This approving vote of a majority of the voters of a city is necessary to empower the city council to authorize the erection of waterworks; but the power to make the necessary contract and grant the necessary rights and franchises is exercised by the city council after the approval of the voters, and not directly by the voters. The approval of the voters precedes the contract made by the council, though its terms may be formulated, more or less in detail, for the information of the voters before the election."

I am unable, however, to agree with the opinion of the CHIEF JUSTICE that the referendum required by subsection 68 does not apply and is not necessary in the case of an ordinance granting a franchise to maintain and operate an existing plant. What may be the extent of the new construction in the present instance is not necessary to consider. It apparently contemplates substantial additions to an existing plant.

A difficulty comes from giving too narrow a construction to the word "erect" contained in subsection 68. In 21 C. J., at page 819, "erect" is defined as follows:

"The word, in its narrowed signification, means to build; to build up; to construct; to raise; to raise up; to raise and set up in an upright perpendicular position; to rear or set up; to set up; to put up; but by contex, it also means to establish; to institute; to found, form, frame, etc."

Port Huron, etc., Railway Co. v. Richards, 51 N. W. 680, 90 Mich. 577, cited in the note, affords an illustration. It was decided that the requirement to erect a railroad station meant something more than the construction of a building.

"The agreement contemplated that facilities should be furnished, not only for the accommodation of passengers, but for the reception and shipment of freight. This involved more than a mere place of shelter. 'And have erected a regular station' means more than the erection of a stationhouse. The word 'erect' may mean 'to build,' or it may mean to 'set up' or 'found' or 'establish' or 'institute," according to the context. In the connection here used, it means 'to set up,' 'to establish.' It was conceded upon the trial that, during the 15 months named in the agreement, there was no spur or

side track at the point named, and no person in charge to look after baggage or freight; that the building erected was open; that freight trains were irregular; that there were none of the usual and in fact no facilities for the shipment of lumber or logs or cattle, and none for the care of other freight received or left for shipment. Under these facts, there was no error in the court's direction that as a matter of law a regular station for freight and passengers had not been established. It is not necessary to distinguish between a station and a regular station, as a station for passengers and freight would include the usual and necessary incidents of a station for the convenience of passnegers, and that freight was intended to be shipped to and from.''

The only possible purpose of erecting a plant— whether by the city or by private enterprise—is to operate it. The plant having once been erected, connections made, involving investment by users, other sources of supply abandoned, the necessity for continuance of the system is greater than for its original establishment. The public necessity, once created is so great that courts take cognizance of it on proper occasions by enjoining abandonment of service and by appointment of receivers to insure its continuance. The Legislature must have recognized this, and courts cannot overlook it. It is hardly to be doubted that the act of 1884 conferred upon cities as much right to grant a franchise to operate an existing plant as to operate one to be erected. The CHIEF JUSTICE and I are agreed on that. This grant of power, as expressly made in subsection 68, was to ''erect.'' It is accompanied by the limitation requiring referendum. This limitation is also on "erection.'' The limitation is exactly as broad as the grant. Subsection 70 assumes or presupposes a franchise to ''build and operate.'' The power to grant such a franchise is found in subseciton 68 and nowhere else, and whatever power is granted in subsection 68 is subject to the limitation of subsection 68. If the power here in question existed under the act of 1884, it exists subject to referendum.

It is sought to justify the distinction by pointing out that where a public utility corporation has served for a time it may well be granted an additional term if the service is satisfactory. This involves a different distinction than that sought to be set up; the

distinction between an original and a renewal franchise. If here is any statutory basis for such a distinction, it is not involved here. The proposed franchise is not a renewal. It is original. The service which John Davis Bowles and his assigns may render cannot be judged by electors or council upon past performance. The Legislature might, of course, have presumed that the council would fairly and wisely represent the people in determining whether waterworks should be erected in the first place, but it did not. What warrant have we for saying that it did so when the question to be decided is whether there shall be continued operation of existing works? True, the people are interested in "the kind of installation to be made, the quality and amount of supply of water, and the ability of the concern to carry out its undertakings." Because of that interest the Legislature gave them a determining voice. Are not all of these matters—of such interest to the people—as well as others such as rates and charges, involved in the proposed franchise? Is it not the reasonable supposition that the grant of a franchise involving such vital interest of the people, by which they are bound for a long period, involving generally a monopoly of a daily necessity, was deemed too important a matter to intrust to the uncontrolled judgment or discretion of the council, or that those whose interests were so vitally affected were thought entitled to have a voice in the decision? Of course, the question of granting a franchise to operate existing works is different from the question of granting one to erect works originally and operate them. The practical considerations may be different in the two cases. But who shall say which question and which considerations are more important, or that the Legislature has intrusted the one decision to the council and the other to the people?

It may be asked why subsection 90 was enacted in 1893, if not to grant a new power? Even though a satisfactory answer cannot be given to that question, does it affect the result? Construing subsection 68, as

I do, as containing the power to grant a franchise to operate existing works, a new grant of the same power would not change the situation. If it be urged that the words "by ordinance" involve the exercise of the power in a different way, the answer is that under section 15 of the Act of 1884 (Code, § 321), all municipal powers were to be exercised by ordinances. Hence this involves no new or different power. Agreeing that the act of 1893 is not so repugnant to the provision of subsection 68 for referendum as to effect its repeal by implication, or its modification, the act would seem to have no influence on the proper construction of the earlier act. Is it correct, though, to call it a useless piece of legislation?

This act (section 6) extends the powers therein mentioned to villages. It covers street car lines, lighting purposes, and other public conveniences and comforts. These are new matters of legislative concern, at least unprovided for in the 1884 act. Why say that they are of no importance?

The opinion of the CHIEF JUSTICE, in referring to the 1893 act as useless legislation unless it be construed as creating a new power unknown to the 1884 act, I think overlooks an important fact. The act of 1884 is comprehensive. It provides a blanket charter for cities, towns, and villages in the territory. Many had no doubt been previously organized under special charters or under the Municipal Code of 1880 (chapter 1). Existing general laws were repealed (section 100), but special charters were not. The previous organization of cities and towns if not questioned as to its legality, within two years after such organization, was validated (section 99). Such existing municipalities were not brought automatically under the 1884 charter, but were merely permitted to "abandon" the old organization and "incorporate" or "reorganize" under the new Code (sections 101, 102). So it may be fairly assumed, or at least cannot be overlooked, that when the 1893 act was passed there were numerous municipalities in the territory not governed by the

act of 1884, lacking the power to grant franchises, and petitioning the Legislature to supply such lack.

The act of 1893, being limited in its effect to towns and villages, does not of itself, of course, affect the question. Its application to cities can only be claimed by virtue of the cited provisions of the act of 1897.

This act, in its original form, again assumes to confer power upon all incorporated cities, towns, and villages having the requisite population "to erect and operate waterworks * * * or to authorize the erection of the same by others." If it were claimed that this act, independent of the provision referred to, granted a new power formerly not enjoyed under the 1884 act, what we have just said as to the 1893 act would be applicable. It is also to be observed that the main purpose of this act seems to have been to authorize the issuance and sale of bonds for the purposes enumerated and the regulations and procedure governing such issuance and sale.

The provision relied upon, that the incorporated city town, or village "shall have all powers now given by law to incorporated towns," following the enumeration of specific powers, should, it would seem, be construed as though it read "shall have all other powers." Since in the original act the power to erect and operate waterworks is specifically enumerated, it would not come within the meaning of "all other powers."

Unless the construction given the statutes by my brethren of the majority should be imperative and unavoidable, it seems to me that it would be a step backward to adopt it. The use of the referendum as a principle of government has been growing rather than diminishing since the enactment of the Municipal Code, as note our Constitution providing that "the people reserve the power to disapprove, suspend and annul any law enacted by the Legislature," with certain exceptions. In the Code of 1880 municipal but not private ownership was provided for. No referendum was required. In 1884 municipal and private ownership was

provided for in the same section, subject to the same referendum. It is not apparent to me that the Legislature has by any later enactment evinced an intention of making any distinction in the manner of obtaining the consent of the municipality. Unless they are on the same footing, embarrassing conflict of powers may arise if the council and electors have established municipal ownership and the council, without the advice or consent of the electors, has power to pursue another and antagonistic policy and grant a franchise to a competing private concern occupying the field when the city entered into it. Of course, if the Legislature should clearly declare that the municipal power may be exercised by these variant methods it would settle the matter and be none of our concern, but, it not being clear to me that any such declaration has been enacted, I should be loath to conclude that it has done so.

For the reasons stated, I dissent.