910 P.2d 308

**Harold R. JOHNSON, et al.,**
**Plaintiffs–Appellants,**

v.

**CITY OF ALAMOGORDO, et al.,**
**Defendants–Appellees.**

**No. 22550.**

Supreme Court of New Mexico.

Jan. 16, 1996.

Steven K. Sanders, Albuquerque, for Appellants.

George R. "Pat" Bryan, III, Timothy V. Flynn–O'Brien, Albuquerque, for Appellees.

**OPINION**

FROST, Justice.

1. This case addresses an issue of first impression in New Mexico: whether, in a home-rule municipality, an ordinance changing the rates that a city-owned utility charges is subject to popular review by referendum. We decide that such an ordinance is not subject to a referendum.

## I. FACTS

2. In 1977 the City of Alamogordo, New Mexico, passed revenue bond Ordinance 555 to finance city water and sewer improvements. As required by Ordinance 555, Alamogordo conducted yearly audits of water and sewer revenues and expenses. These audits identified deficits for the years 1990 through 1992. In addition, Alamogordo's consultant, CH2M Hill, determined in a 1993 rate study that Alamogordo had been running deficits under Ordinance 555 for six years and recommended a rate increase to meet the ordinance's revenue requirements. Ordinance 555 obligated Alamogordo to charge rates at least equal to 100% of the utility's operating and maintenance expenses and 130% of the revenue bonds' principal and interest. In November 1991 Alamogordo's bond underwriter informed Alamogordo that it was violating its obligations on the bonds and was in default, and the underwriter requested immediate remedial action.

3. The Alamogordo City Commission (the Commission) enacted Ordinance 872 in 1993 to remedy the revenue deficit and to bring Alamogordo into compliance with the requirements of Ordinance 555, by increasing the rates for water and sewer services. In April and May 1993 a group of Alamogordo's citizens (the Citizens) complied with the requirements for placing Ordinance 872 on the ballot for popular consideration under the referendum procedure provided by New Mexico statute, NMSA 1978, § 3–14–17(A) (Repl.Pamp.1995), and the Alamogordo City Charter. However, Alamogordo's City Manager, Robert Stockwell, informed the Citizens that Alamogordo would not hold a referendum on Ordinance 872 because the ordinance was administrative and consequently not subject to popular review through a referendum.

4. The Citizens, who were customers of Alamogordo's water and sewer services, filed

this action in the United States District Court for the District of New Mexico, alleging a deprivation of their rights under the United States Constitution and seeking both monetary and injunctive relief. The parties stipulated among other things that the referendum petition was in proper form and contained a sufficient number of valid signatures, and that the Citizens timely filed the petition. The district court granted Alamogordo's motion for summary judgment, accepting Alamogordo's argument that Ordinance 872 involved administrative matters beyond popular review. The Citizens appealed to the United States Court of Appeals for the Tenth Circuit.

5. The court of appeals certified the following questions to us, and we accepted certification under NMSA 1978, Section 34–2–8 (Repl.Pamp.1990 & Cum.Supp.1995) and SCRA 1986, 12–607 (Repl.Pamp.1992 & Cum. Supp.1995).

1. Whether NMSA 1978, Section 3–14–17(A) or Article X, Section 2(A) of the Alamogordo City Charter, or both, embody an implied exception for administrative matters, so that such matters need not be submitted to a public vote through the use of a referendum?

2. If question 1 is answered in the affirmative, whether Ordinance 872 of the Alamogordo City Commission, which raised the rates of a city-owned utility, constitutes an administrative matter within the scope of this exception?

3. If question 1 or 2 is answered in the negative, whether the Revenue Bond Act, NMSA 1978, § 3–31–6 (Repl. Pamp.1995), nonetheless precludes the use of a referendum to repeal a City Commission's utility rate increase intended to satisfy payment obligations on outstanding revenue bonds (i.e., Ordinance 872)?

We answer the first two questions in the affirmative. We therefore do not address the third question.

## II. IMPLIED EXCEPTION TO REFERENDUM POWER FOR ADMINISTRATIVE AND EXECUTIVE MATTERS

6. Under both New Mexico statute [1] and the Alamogordo City Charter,[2] Alamogordo's voters retain the power of referendum over ordinances or resolutions enacted by the Commission. We discuss the statute and charter together because they are substantively the same for the issues we address. The Citizens argue that the plain language of these referendum provisions supports a conclusion that *all* ordinances or resolutions are subject to referendum, regardless of their substance or effect. We disagree.

■ 7. It is generally accepted that there is a "dichotomy between a governing body's legislative acts, which are subject to initiative and referendum, and its administrative or executive acts, which are not." *DeVita v. County of Napa*, 9 Cal.4th 763, 38 Cal. Rptr.2d 699, 707, 889 P.2d 1019, 1027 (1995)

**1.** NMSA 1978, Section 3–14–17(A) (Repl. Pamp.1995) reads as follows:

If within thirty days following the adoption of an ordinance or resolution, a petition, signed by the qualified electors in a number more than *twenty percent of the average number* of voters who voted at the previous four regular municipal elections or more than twenty percent of the number of voters who voted at the previous regular municipal election, whichever is the greater, is presented to the commission asking that the ordinance or resolution in question be submitted to a special election for its adoption or rejection, the ordinance or resolution shall become ineffective upon verification of the petition and the commission shall within ten days of verification adopt a resolution calling for the holding of a special election on the measure within ninety days of the verification of the petition.

**2.** Article X, Section 2(A) of the Charter of the City of Alamogordo (Mar. 9, 1983) reads as follows:

If within thirty (30) days following the adoption of an ordinance or resolution by the Commission, a petition, signed by the qualified electors, in a number no less than twenty (20) per cent of the average number of voters who voted at the previous four (4) regular City elections or no less than twenty (20) per cent of the number of voters who voted at the previous regular City election, whichever is greater, is presented to the Commission asking that the ordinance or resolution in question be submitted to a special election for its adoption or rejection, the ordinance or resolution shall become ineffective and the Commission shall provide for an election on the measure within sixty (60) days of the filing of the petition.

(in bank). Many jurisdictions have recognized this dichotomy. *E.g., City of Aurora v. Zwerdlinger,* 194 Colo. 192, 571 P.2d 1074, 1076–77 (1977) (en banc); *Seaton v. Lackey,* 298 Ky. 188, 182 S.W.2d 336, 338 (1944); *Tillamook Peoples' Util. Dist. v. Coates,* 174 Or. 476, 149 P.2d 558, 561 (1944); *see also* 5 Eugene McQuillin, *The Law of Municipal Corporations* § 16.55 (Deborah L. Nelson et al. eds., 3d ed.1989 & Supp.1995). The Citizens attempt to distinguish these and other cases by pointing out minor linguistic differences between NMSA 1978, Section 3–14–17(A) and these other jurisdictions' foundational laws, *i.e.,* the enabling provisions. However, these differences do not affect the soundness of the rationale underlying this dichotomy.

8. The rationale is commonsense. Subjecting day-to-day administrative and executive decision-making to popular referendum would paralyze local government. *See Hopping v. Council of Richmond,* 170 Cal. 605, 150 P. 977, 979 (1915). New Mexico had judicially recognized the legislative-administrative distinction prior to the enactment of Section 3–14–17(A). *See State v. Spears,* 57 N.M. 400, 406, 259 P.2d 356, 360 (1953) (explaining difference between administrative and legislative acts of public officer or board, in context of challenge to delegation of power by legislature). We presume that the legislature was aware of this distinction and its underlying rationale when it enacted Section 3–14–17(A), *Chavez v. American Life & Casualty Ins. Co.,* 117 N.M. 393, 396, 872 P.2d 366, 369 (1994) ("The legislature is presumed to know the law, including the laws of statutory construction, when it passes legislation."), and we construe Section 3–14–17(A) in light of this distinction, *Investment Co. v. Reese,* 117 N.M. 655, 658, 875 P.2d 1086, 1089 (1994) (stating that a court should read a statute contextually in light of the common law).

9. A strictly literal interpretation of the referendum power, as urged by the Citizens, would lead to absurd results. Under this interpretation, Alamogordo's voters would be able to challenge every Commission decision made by ordinance or resolution, no matter how mundane, potentially reducing all government action to a snail's pace. We do not believe the legislature intended this result. *See Stanley v. Raton Bd. of Educ.,* 117 N.M. 717, 719, 876 P.2d 232, 234 (1994) ("When a peculiarity in the literal language of a statute leads to an absurd result, the court may construe the statute according to its purpose to avoid the absurdity.").

10. Moreover, this Court implicitly recognized the dichotomy between legislative and administrative acts in the referendum context in *Asplund v. City of Santa Fe,* 31 N.M. 291, 244 P. 1067 (1926). In construing a statute mandating a referendum for the construction of a waterworks system, the Court recognized that the statute did not require *all* ordinances to be subject to a referendum election. The Court held an ordinance granting a franchise to establish a municipal utility required a referendum, although an ordinance granting a franchise to operate, maintain, enlarge, or improve an established municipal utility did not. *Id.* at 296–97, 244 P. at 1069. Although the *Asplund* Court did not use the terms "legislative" and "administrative," the Court's analysis corresponded with this distinction.

11. In their brief, the Citizens point out that *Asplund* was a split decision, with the Chief Justice authoring the "Opinion of the Court," one Justice specially concurring, and one Justice dissenting.[3] *Asplund* therefore cannot have stare decisis effect under the New Mexico Constitution, Article VI, Section 5. However, we do not cite *Asplund* as precedential authority; rather, we use it as an interpretative aid in construing Section 3–14–17(A). The *Asplund* Court's analysis is viable as a backdrop against which the legislature enacted Section 3–14–17(A) in 1965. *See* 1965 N.M.Laws, ch. 300 (codified at NMSA 1953, § 14–13–17 (Supp.1965)). In addition, other jurisdictions have long recognized the distinction between legislative matters, which are subject to referendum, and

---

**3.** Until 1929, the Supreme Court of New Mexico had only three Justices. *See* 1929 N.M.Laws, ch. 9, § 1.

administrative matters, which are not. *See, e.g., Hopping,* 150 P. at 979.

12. The Citizens also point out that the legislature enacted the predecessor to Section 3–14–17(A) in 1919. *See* 1919 N.M.Laws, ch. 121, § 4 (codified at NMSA 1929, § 90–3913). However, this fact does not change our analysis. First, the legislature in 1965 expressly repealed the 1919 enactment as part of a comprehensive revision of the Municipal Code. *See* 1965 N.M.Laws, ch. 300, § 595. The language of the 1965 enactment is also different from the 1919 enactment. For our purposes, therefore, the legislature enacted the referendum statute in 1965. Second, even assuming for the sake of argument that the applicable date is 1919, the common-law distinction between legislative and administrative matters predated 1919. *See Hopping,* 150 P. at 979.

■ 13. Finally, the parties both present arguments based on Alamogordo's historical practices. We do not find these arguments persuasive. First, the factual evidence of custom is conflicting and equivocal. Second and more importantly, the scope of the voters' referendum power is an issue of statewide importance upon which the state legislature has spoken. Alamogordo's interpretation of state law does not bind us. *See O'Malley v. City of Syracuse,* 813 F.Supp. 133, 144 (N.D.N.Y. 1993) (noting that, while city's interpretation of ordinance might be entitled to some deference, the court is the final authority on issues of statutory construction and must reject city's interpretation when inconsistent with statutory mandate); *cf. Mervynne v. Acker,* 189 Cal.App.2d 558, 11 Cal.Rptr. 340, 344–45 (1961) (precluding initiative to repeal all city parking meter ordinances because traffic control is of statewide concern). We conclude that an ordinance or resolution must be legislative in nature to be subject to review by referendum.

### III. NATURE OF ALAMOGORDO'S ORDINANCE 872

■ 14. We next must determine whether in this case Alamogordo's Ordinance 872, increasing the rates for water and sewer services, fell within this exception for administrative and executive matters. In a recent, instructive opinion, the Supreme Court of Kansas held that an ordinance establishing a storm water utility system was administrative. *City of Wichita v. Kansas Taxpayers Network, Inc.,* 255 Kan. 534, 874 P.2d 667, 672–73 (1994). The court set out a four-part test for determining whether an ordinance is administrative or legislative:

1. An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance.

2. Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative.

3. "Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of a policy."

4. No one act of a governing body is likely to be solely administrative or legislative, and the operation of the initiative and referendum statute is restricted "to measures which are quite clearly and fully legislative and not principally executive or administrative."

*Id.,* 874 P.2d at 671–72 (citations omitted) (quoting *City of Lawrence v. McArdle,* 214 Kan. 862, 522 P.2d 420, 421 (1974)); *see also* McQuillin, *supra,* § 16.55. We adopt this test because it cogently delineates the legislative-administrative distinction.

■ 15. There is a split of authority in jurisdictions that have considered whether municipal ordinances setting utility rates are administrative or legislative. *Zwerdlinger,* 571 P.2d at 1077 (noting that split exists, and concluding that such ordinances are administrative); *see* McQuillin, *supra,* §§ 16.57–.58 (citing jurisdictions). Applying the four-part test in *Kansas Taxpayers Network,* we agree

with the court in *Zwerdlinger* that utility rate ordinances are administrative in character. *But cf. McKinley v. City of Fraser,* 366 Mich. 104, 114 N.W.2d 341, 342–43 (1962) (permitting municipal ordinance establishing sewer rates to be adopted by initiative, without regard to whether ordinance is legislative or administrative).

16. First, Ordinance 872 executed the existing revenue bond Ordinance 555. Moreover, utility rates are not permanent; they frequently change as operating expenses fluctuate. Second, rate-making is a small segment of the overall policy issues of a city-owned utility. Third, rate-making is a function that, more than most others, requires specialized training and experience. *See El Vadito de los Cerrillos Water Ass'n v. New Mexico Pub. Serv. Comm'n (In re Cerrillos Water & Irrigation Co.),* 115 N.M. 784, 787, 858 P.2d 1263, 1266 (1993) (noting that utility rate decisions require highly technical expertise). Fourth, rate-making is a function that relates to the day-to-day operation of a utility in balancing revenues against expenses. Consequently, rate-making is principally administrative. *See In re Supreme Court Adjudication of Initiative Petitions,* 534 P.2d 3, 7 (Okla.1975); *Whitehead v. H & C Dev. Corp.,* 204 Va. 144, 129 S.E.2d 691, 696 (1963).

17. The Citizens point to an earlier decision of this Court discussing a home-rule municipality's power to increase sewer and water charges, in which we said, "the City *legislated* by passing an ordinance increasing the charges for both services." *Apodaca v. Wilson,* 86 N.M. 516, 521, 525 P.2d 876, 881 (1974) (emphasis added). The Citizens argue that this statement supports a conclusion that, even if New Mexico recognizes the legislative-administrative dichotomy, a municipal ordinance setting utility rates is legislative and, consequently, subject to a referendum. However, the Court in *Apodaca* did not address the distinction between legislative and administrative acts nor the scope of the referendum power. Rather, the Court decided that the governing body of a home-rule municipality has the power to increase sewer and water service charges in the absence of express limitation of this power by

the state legislature. *Id.* Consequently, the *Apodaca* Court's characterization of municipal ordinances setting utility rates as legislative was dictum, and this dictum does not bind us. *See Kent Nowlin Constr. Co. v. Gutierrez,* 99 N.M. 389, 390–91, 658 P.2d 1116, 1117–18 (1982) ("Dictum is unnecessary to the holding of a case and therefore is not binding as a rule of law."), *appeal dismissed sub nom. Sardoz v. Kent Nowlin Constr. Co.,* 462 U.S. 1126, 103 S.Ct. 3104, 77 L.Ed.2d 1359 (1983).

## IV.  CONCLUSION

█ 18. For the foregoing reasons we hold that the voters' referendum power under New Mexico statute and the Alamogordo City Charter is subject to an implied exception for administrative and executive matters, and that an ordinance that changes the rates charged by a city-owned utility is an administrative matter within the scope of this exception. Consequently, we do not decide whether the Revenue Bond Act would independently preclude a referendum in this case.

19.  **IT IS SO ORDERED.**

RANSOM and MINZNER, JJ., concur.