# Staunton

## R. L. BLANKENSHIP v. CITY OF RICHMOND.

September 8, 1948.

Record No. 3372.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*May, Simpkins, Young & Rudd,* for the appellants.

*J. Elliott Drinard,* for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

The forty-two parties whose names are signed to the bill in this cause allege:

(1) that they are residents of, and property owners in, "the area adjacent to the 3400 block of Forest Hill avenue in Richmond, Virginia;" (2) that they acquired their respective homes in this area on the belief that it would continue to be classified under the zoning ordinance of the City of Richmond as a residential district; (3) that on July 13, 1945, without their knowledge, the city adopted an ordinance changing the classification of the south side of the 3400 block of said avenue from "C-Single Family Dwelling District" to G-Local Business District."

It is charged in the bill that the zoning ordinance changing the classification of the area is null and void because: (a) proper legal notice of the public hearing on the adoption of the ordinance was not given; (b) the adoption of said ordinance was procured upon the urgent personal solicitation of P. L. Travis who, at the time, was a member of the city council representing Madison ward, in which ward the 3400 block of Forest Hill avenue is located; Travis prior to the adoption of the ordinance had secured an option to purchase a dwelling house situated on the corner of Forest Hill and Dundee avenues within this block, which option was to become effective only in the event that the 3400 block was changed from a residential to a business district so as to permit the erection and maintenance of a filling station on the lot; (c) after the ordinance was adopted, Travis exercised the option to purchase, erected a filling station, and is now operating it as permitted by the ordinance; and (d) the ordinance was adopted solely for the personal and private gain of Travis.

The prayer of the bill is: (1) that the ordinance be declared null and void, and (2) that the city be enjoined from enforcing the provisions of the ordinance and from "permitting the use of the balance of the 3400 block of Forest Hill avenue outside of the filling station of the said P. L. Travis other than as a C-Single Family Dwelling District" and for general relief.

Complainants obtained this appeal from a decree sustaining the demurrer filed by the City of Richmond, the only respondent.

It is contended in this court that the ordinance is null and void for two reasons: (1) that legal notice was not given for public hearing on the adoption of the ordinance, and (2) that it was initiated, procured, and adopted for the personal, private and pecuniary interest of a member of the council.

Chapter 197 of the Acts of 1926 [Michie's Code, sections 3091(1)-3091(26)] authorizes the councils or other governing bodies of municipalities to divide the municipal area into

zones or districts and to regulate the use of lands and buildings therein.   Sub-section 4 of said act provides that no such zoning or regulating ordinance shall become effective "until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard.   At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general publication, in such city or town."

Pursuant to this enabling act, the City of Richmond adopted a comprehensive zoning ordinance which we approved on May 19, 1943, under which ordinance the 3400 block of Forest Hill avenue was classified as a "C-Single Family Dwelling District."   Sub-section 5 authorizes such zoning ordinances to be amended, supplemented, changed, modified, or repealed, but provides that no such amended ordinance shall become effective until notice of a public hearing as provided for in sub-section 4 shall be given.

Complainants concede that notice of the time and place of the hearing on the ordinance of July 13, 1945, was published for more than fifteen days in the Richmond Times Dispatch, a paper of general circulation in the City of Richmond, but they contend that this publishing of the notice was inadequate because it appeared in the paper in small type and an inconspicuous place and they did not see it. They intimate that, had the notice appeared in larger type or in another form or in another place in the newspaper, they might have seen it.

The provisions of the statute requiring notice to be given and a public hearing to be held do not prescribe the character of the notice, the size of type to be used in its publication, or where it shall appear in the newspaper.   The statute is similar in this respect to many others, notably the statutes dealing with orders of publication (section 6070), service of notice generally on non-resident defendants in divorce cases (section 5108), service of notice in condemnation proceedings (sections 4365, 4374), service of notice relating to acts of the State Corporation Commission affecting transportation and transmission companies (section 156

of Constitution) and many others. In no instance do there appear any specifications governing the size of type, form or place where the notice shall appear in the newspaper.

It appears from a copy of the notice as published, filed as Exhibit A in the record, that the type used is identical in size and appearance with other legal notices required by statute appearing almost daily in the newspapers of the city and State. The fact that the complainants did not see the notice certainly cannot affect the validity of the ordinance in question when everything required by the statute was done before its adoption. It is a matter of almost daily occurrence that rights are affected and the status of relationships is changed upon the giving of similar notice, but no one may successfully contend that acts predicated upon such notice are rendered invalid because persons affected did not see the notice in the newspaper.

The ordinance of May 19, 1943, whereby the area in question was classified as a residential district was adopted after publication of notice in the same type and in a similar place in the newspaper. Yet the complainants insist that publication of the notice in the first instance was sufficient while they insist that a similar publication of notice on the adoption of the ordinance of July 13, 1945, was insufficient. The position is inconsistent and there is no merit in this contention.

The substance of complainants' next contention is that the ordinance is void because it was passed at the solicitation and for the personal gain of Travis, a member of the council, who thereby was enabled to erect and maintain a filling station in an area which prior to the adoption of the ordinance had not been possible.

The facts admitted on demurrer do not present a case within the influence of that excellent principle of the common law which prohibits a member of a municipal council from contracting with the municipality for personal gain. This concept of the common law principle is expressed in Code section 2708, and Chapter 4, section 8, of the Code of

the City of Richmond. See *Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 149 S. E. 632.

Every public official whether a member of the administrative, legislative, or judicial branch of the government, should impartially perform his official duty for the good of the public, uninfluenced by thoughts of personal gain or loss. Such officials are trustees for the people who have a right to require them to exercise their best judgment in everything that appertains to the people or their welfare, unaffected and unprejudiced by anything that might inure to the officials' own interest as individuals. However, where a member of the legislative branch of the government offends in these particulars in performance of a purely legislative duty, he is answerable to the electors from whom he derived his official position and not to the courts which have no power to inquire into the motives which prompted his action on a purely legislative matter.

The complainants contend that the adoption of a zoning ordinance is quasi-judicial in character and hence the personal interest of a member of a legislative body adopting such an ordinance is a proper subject for judicial inquiry.

It is not always easy to determine just when a legislative body is acting in a quasi-judicial capacity, or in a wholly legislative caapacity. In general, it may be said that such a body acts in a quasi-judicial capacity when it grants or denies a privilege or benefit, and in a legislative capacity when it prescribes a course of conduct.

Suit was brought in *Gardner* v. *Bluffton*, 173 Ind. 454, 89 N. E. 853, 90 N. E. 898, Ann. Cas. 1912A, 713, to enjoin the letting of a contract for improving a street and to have the ordinance authorizing the improvements declared null and void. It was charged that a member of the council voting for the ordinance owned a lot abutting the street to be improved and for that reason was disqualified from voting and, by rejecting his vote, the ordinance failed of passage by the necessary majority. In the course of the opinion denying relief, the Indiana court said: "In taking all the proceedings disclosed in appellants' complaints, the common

council was in the exercise of its legislative or administrative powers. It is not until after the final notice has been given bringing the property owners in for a hearing upon the assessment of benefits to their lots that the council may be said to act in a quasi-judicial capacity. * * * When such tribunals sit in a judicial or quasi-judicial capacity, members personally interested in a pending proceeding may be disqualified from acting."

"In passing the improvement resolution and ordinance in question, the common council was acting in a legislative capacity, and the courts generally hold that they cannot inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances, which are not contractual, but wholly legislative, in character." See *Moore* v. *Ashton*, 36 Idaho 485, 211 P. 1082, 32 A. L. R. 1512, Annotation 1517; *Clifton Hills Realty Co.* v. *Cincinnati*, 60 Ohio App. 443, 21 N. E. (2d) 993; *Reckner* v. *German Township School Dist.*, 341 Pa. 375, 19 A. (2d) 402, 133 A. L. R. 1254, Annotation 1257.

■ An ordinance that regulates or restricts the use of property regulates or restricts conduct with respect to that property and is purely legislative. It was held in *Roanoke* v. *Fisher*, 137 Va. 75, 119 S. E. 259, that an ordinance which forbade the use of property for the sale of jewelry at public auction between certain hours was valid as a proper exercise of the police power. In the course of the opinion, this court said:

■ "It is likewise well settled that evidence *aliunde* is inadmissible to assail the motives which induced the enactment of an ordinance, for the purpose of determining its validity. *People* v. *Gibbs*, 186 Mich. 127, 152 N. W. 1053, 1055, Ann. Cas. 1917B, 830; *Gardner* v. *Bluffton*, 173 Ind. 454, 89 N. E. 853, 90 N. E. 898, Ann. Cas. 1912A, 713; 7 McQuillin, sec. 732. Although such evidence is admissible to sustain the validity of the ordinance, and often has decisive force.

■ "On the subject of the validity of an amendment of a city ordinance attempting to regulate the hours during

which all auctioneers were thereby forbidden to conduct public auction sales or to sell goods at public auction, in *People* v. *Gibbs,* just cited, this is said: 'The contention that this amendment was enacted for the purpose of protecting or benefiting special interests, and was inspired by other motives than guarding the general welfare, is immaterial and cannot be considered here. Courts are not concerned with the motives which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives.' " See *Richmond Fairfield R. Co.* v. *Llewellyn,* 156 Va. 258, 157 S. E. 809, 162 S. E. 601; and *Mumpower* v. *Housing Authority,* 176 Va. 426, 11 S. E. (2d) 732.

A zoning ordinance regulates or restricts the use of property within the zoning area. In *Clifton Hills Realty Co.* v. *Cincinnati, supra,* it appeared that the City of Cincinnati had adopted a general comprehensive zoning ordinance. Subsequent to its adoption, plaintiff acquired property zoned for highly restricted residential use and spent more than a million dollars in its development. Thereafter the council amended the zoning ordinance and placed this property along with other property similarly zoned in a different classification, thereby reducing the restrictive provisions for its use. The validity of the amended ordinance was attacked on constitutional grounds. In passing upon a demurrer to the petition for a declaratory judgment, the court said:

"It is clear that in passing zoning ordinances a municipal council is engaged in legislating and not in contracting. The action lacks all the essential elements of a contract. No one is bound to the municipality as a result, and the municipality binds itself to no one thereby. In speaking of this phase of zoning legislation the Supreme Court of the United States in *Reichelderfer* v. *Quinn,* 287 U. S. 315, 53 S. Ct. 177, 180, 77 L. Ed. 331, 83 A. L. R. 1429, said: 'It

is enough to say that the zoning regulations are not contracts by the government and may be modified by Congress.' "

\* \* \* " ' "A person has no property, no vested interest in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will \* \* \* of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances." ' "

A comprehensive zoning ordinance adopted by the county of Fairfax was attacked on various grounds in *Fairfax County* v. *Parker*, 186 Va. 675, 44 S. E. (2d) 9. The following excerpt from the opinion is apropos both as to the briefs and the dominant issue in this case:

"Much space in the brief of the appellee is devoted to criticisms of the ordinance with which we are not now concerned. These denunciations range from the lack of need for the adoption of any zoning ordinance by the county authorities, to the unreasonableness of various restrictions applicable to the respective districts therein.

"(1) Whether the entire area of the county should have been zoned is a matter which the General Assembly, through the enabling act, has delegated to the local legislative body, the County Board of Supervisors. It is a legislative matter with which we are not concerned. *Zahn* v. *Board of Public Works*, 274 U. S. 325, 328, 47 S. Ct. 594, 71 L. Ed. 1074; *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 584, 49 S. Ct. 430, 73. L. Ed. 856."

It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character.

· The complainants in fact are asking the court to adopt a new zoning law. Neither Travis nor any other owner of property fronting on the south side of Forest Hill avenue is a party to the suit. The prayer of the bill is that the City of Richmond be enjoined from using the property other than that owned by Travis for business purposes. The city does not own the property. Obviously it does not intend to use it for any purpose. Complainants seek to have the ordinance declared null and void because of Travis' motives in supporting it. Travis occupies and uses the property in the block owned by him solely by force of the ordinance. Complainants do not seek to disturb or restrict Travis in the use of his filling station. It is the use of the property owned by others, that is, the balance of the property in this block, that is sought to be restricted. If the ordinance is void, it is void for all purposes, and no one, including Travis, has a right to use any of the property in the block for business purposes. It would be inequitable to permit Travis to use that part of the block in question owned by him for business purposes, and to deny the same right to the owners of the other lots in the same block. No such order entered in this cause would be binding upon those owners because they are not parties to this proceeding.

In other words the court is asked to exercise a legislative function and to say that the ordinance is valid as to the Travis property but void as to all other property in the block; or that the ordinance is void in its entirety, but that Travis may be permitted to continue to use his property for business purposes. The ordinance is either valid in its entirety or it is wholly void. To modify the ordinance as requested by complainants would be to legislate and not to adjudicate.

*Affirmed.*