# Richmond

STEPHEN L. WHITEHEAD, JR., ET AL. v. H AND C DEVELOPMENT CORPORATION, ET AL.

March 4, 1963.

Record No. 5540.

Present, All the Justices.

The opinion states the case.

*Herbert K. Bangel* (*A. A. Bangel; Bangel, Bangel and Bangel,* on brief), for the appellants.

*John A. MacKenzie* (*MacKenzie and Babb,* on brief), for the appellees.

*J. S. Livesay, Jr., City Attorney* (*M. A. Korb, Jr.*, on brief), for City of Portsmouth, *amicus curiae.*

SPRATLEY, J., delivered the opinion of the court.

The question on this appeal is whether a certain proposed ordinance is within the authority of the initiative and referendum provisions of section 1, chapter 10 of the charter of the city of Portsmouth, as amended by an Act of the General Assembly, approved February 23, 1918, Acts 1918, Chapter 69, pages 123 *et seq.*

Section 1, chapter 10 of the charter of Portsmouth provides that: "Any proposed ordinance or the question of the repeal of an existing ordinance may be submitted to the council of said city by petition signed by the qualified electors of the city equal in number to the percentage hereinafter required," and then provisions follow as to how the petition shall be filed, the alternatives of the council, when the election shall be held, if the ordinance is not adopted by the council, and the effect thereof.

On December 15, 1961, H and C Development Corporation, a subdivider and developer of residential real estate, in a portion of Norfolk county in the service area of the Water Department of the city of Portsmouth, together with Westview Building Corporation, a builder of residential properties in Portsmouth, and William R. Breedlove, a freeholder and elector of that city, instituted this proceeding by filing a petition for a declaratory judgment against Stephen L. Whitehead Jr., Reba W. McEntire, Mary E. Lee, the city of Portsmouth, and M. B. Payne, E. R. Peterson and C. E. Leavitt, members of the electoral board of the said city.

The petitioners alleged that on December 5, 1961, there was presented to the council of said city a petition signed by 4,052 electors of the city, pursuant to § 1, Chapter X, seeking the adoption of a proposed ordinance to amend § 24-55 of the Code of the city, 1951, as amended, a copy of the proposed ordinance being attached as Exhibit "A;" that on December 12, 1961, the council of the city called a special election, as provided for in the said charter section, to be held on February 6, 1962, a certified copy of the resolution calling such election being attached as Exhibit "B;" that the proposed ordinance was of an administrative and not a legislative nature; that its effect would extend beyond the corporate limits of the city of Portsmouth, into Norfolk and Nansemond counties and the city

of Suffolk, where Portsmouth was without jurisdiction; that, if adopted, it would be unlawful and unconstitutional, in that it would cause the owner of a new building to pay substantially more than the actual cost for a water service connection, in order to provide funds whereby owners of existing water service connections might have the same repaired, maintained and replaced without cost to them; that it would adversely affect the citizens and the taxpayers of the city and subject the city to the expense of a special election, if subsequently it should be declared null and void; that it would materially affect the properties of the two petitioning corporations, and would unlawfully deprive them of their rights and property; and that the contentions of petitioners were denied by the named respondents, and as a result thereof, there were actual controversies between the parties.

Petitioners prayed that the court consider and determine the controversies between the parties, and that the city and its electoral board be enjoined from conducting a special election called to be held on February 6, 1962, until the matters in issue could be heard and determined.

Exhibit "A," attached to the petition, reads as follows:

"AN ORDINANCE TO AMEND SECTION 24-55 OF THE CODE OF THE CITY OF PORTSMOUTH, VIRGINIA, 1951, AS AMENDED, TO PROVIDE FOR THE INSTALLATION AND MAINTENANCE OF WATER SERVICE CONNECTIONS TO WATER MAINS OF THE CITY OF PORTSMOUTH.

"Be it ordained by the Council of the City of Portsmouth, Virginia, that Section 24-55 of the Code of the City of Portsmouth, Virginia, 1951, as amended and reordained to read as follows:

"Section 24-55. Water Service Connections and Maintenance.

"(a) New Water Service Connections.

"Whenever application is made pursuant to Section 24-33 of this chapter for the installation of a new water service connection after December 1, 1961, the applicant shall make the payment or deposit hereinafter specified. The size and location of any such water service connection shall be determined by the Superintendent of the Water Department. All lines and fittings between the main and the meter shall be owned and thereafter maintained by the Water Department.

"For the following sizes of service connection the indicated charge shall be paid in advance:

¾″ inch service connection....................$100.00
1 ″ ″ ″ ....................$115.00
1½ ″ ″ ″ ....................$140.00
2 ″ ″ ″ ....................$165.00

"Where the size of the service connection exceeds 2 inches, the applicant shall be required to pay a charge equal to the actual cost of such installation, plus ten per cent. The Superintendent shall estimate the charge and the applicant will deposit such amount before the work is done. An accounting shall be made of the cost of such installation. If the deposit is less than the charge, the applicant shall pay the difference within ten days, and if the deposit is more than such charge the difference shall be refunded promptly to the applicant.

"(b) Enlargement of Existing Water Service Connections.

"Whenever the owner of any existing water service connection requests an enlargement the application and payment or deposit shall be made as specified in paragraph (a) above. Any such water service connection shall be owned and thereafter maintained by the Water Department.

"(c) Replacement or Repair of Existing Water Service Connections.

"Whenever an existing water service line or connection is damaged or leakage occurs at, or between, the main and the meter, the Water Department shall make such repairs or replacement as the situation requires. All existing water service lines or connections shall be owned and maintained by the Water Department."

Exhibit "B" reads as follows:

"Be it resolved by the Council of the City of Portsmouth, Virginia:

"(1) That there be submitted to a vote of the electors of the City of Portsmouth at an election to be held on the 6th day of February, 1962, the following questions:

"*First:* for or against the adoption of any ordinance to amend Section 24-55 of the Code of the City of Portsmouth, 1951, as amended.

"*Second:* a preference for the ordinance proposed by Stephen L. Whitehead, Jr., and others, or for the substitute ordinance proposed by the City Council."

Payne, Peterson and Leavitt, individually and as members of the electoral board, filed an answer in which they said they neither ad-

mitted nor denied the allegations of the petition, and prayed the court to adjudicate the controversies presented. Likewise, the city answered, admitting the existence of the controversies alleged and praying the court to adjudicate the questions presented in advance of the date set for the holding of the said special election. Whitehead, McEntire and Lee, the first three signers on the petition filed by the electors, and appellants here, appeared by counsel, but filed no pleading.

A copy of an ordinance proposed by the city council as a substitute ordinance was filed and will be hereinafter referred to as Exhibit "C."

The two principal differences between the provisions of the ordinance proposed by the electors of the city, Exhibit "A," and the substitute ordinance proposed by the city, Exhibit "C," are: (1) that in the substitute ordinance the charges for service connections are fixed at a lesser amount, that is, from $50.00 to $150.00 depending on size of connection; and (2) that property owners are required, in some cases, to pay the cost of repairs or replacement of existing connections in the amount expended therefor by the water department, plus 10%.*

On January 4, 1962, the trial court filed a written opinion, in which it held "that all prerequisites for calling the election have been fulfilled;" that "Unless and until the proposed ordinance is adopted by the electorate, there is no matter in controversy and consequently the Court should not and cannot pass upon its validity or constitutionality," but that since property rights had been shown to be involved, jurisdiction would be retained in equity; and that there remained for decision only the question whether the proposed ordinance, Exhibit "A," was administrative or legislative.

A final decree was entered on January 23, 1962. It recited that the court being "of the opinion that the petition set forth matters of law, and not of fact, and that it was unnecessary to take oral evidence, proceeded to hear argument of counsel." It then held that the proposed ordinance, Exhibit "A," "is of an administrative and not of a legislative nature, and is not, therefore, subject to referendum under chapter 10, § 1 of the charter of the city." An injunction was granted forbidding the electoral board and the city from conducting

---

* We are told in the brief of the city that the substitute ordinance was adopted on January 23, 1962, to be effective July 1, 1962, and that subsequently on September 11, 1962, it was repealed and the subject matter thereof became § 29-66 of a new city code.

the special election ordered to be held on February 6, 1962, to which action the appellants objected and excepted, and we granted this appeal.

Appellants assign error to the action of the trial court in holding that the proposed ordinance was administrative, and in refusing to permit it to be submitted to the electorate. They further contend that the court erred "in holding and adjudicating the issues without making all necessary parties, parties to the suit," and "in decreeing that the complainants are such proper parties as are entitled to maintain this action."

We need only consider the assignment relating to the character of the proposed ordinance as administrative. No question was raised during the trial as to who were necessary or proper parties, and no objection was made or grounds assigned in compliance with Rule of Court 1:8.

The petition for appeal named only H and C Development Corporation, Westview Building Corporation and Breedlove as appellees, both in the caption and at the end thereof. See Rule of Court 5:2, § 2.

On motion of the city of Portsmouth, in this Court, for leave to file its brief as *amicus curiae*, on the ground that it was a party to the proceedings in the trial court, and had a substantial interest in the subject matter, leave was granted, and its brief accordingly filed.

The question presented to us is a narrow one, and as we see it, it involves only a determination whether or not the proposed ordinance, Exhibit "A," is legislative in its nature or subject matter, or lies within the administrative or executive capacity of the city. Our consideration must be based on the facts stated in the pleadings and exhibits. It will be remembered that there was no denial of the facts alleged in the petition.

It is a general rule that initiative and referendum provisions are applicable only to acts which are legislative in character and not to acts dealing with administrative or executive matters. 37 Am. Jur., Municipal Corporations, § 209, page 845. It is often a difficult question to decide whether the act of a municipality is in its legislative or administrative capacity. There is considerable conflict in the decisions as to the class to which certain functions or power belong. Some municipal functions are so close to the line that courts vary in their findings concerning them, and there are some instances where the courts have held particular functions to be legislative, while other courts have held them to be administrative. McQuillin, Municipal

Corporations, 3rd ed., Volume 5, § 16.55, pages 253 *et seq.;* § 16.57, page 258, *et seq.;* Annotation, 122 A. L. R. page 769 *et seq.*

The tests as to what are legislative or administrative acts have been stated in various cases. It has been said that those which relate to subjects of a permanent or general character are to be considered legislative; while those which are temporary in operation and effect are administrative. Acts constituting a declaration of public purpose or policy are generally classified as involving the legislative power. The crucial test is said to be whether a proposed ordinance is one making a new law, or one executing a law already in existence. If it merely pursues a plan already adopted by the legislative body itself, or may be properly classed among the executive powers, it is deemed to be administrative. McQuillin, Municipal Corporations, 3rd ed., Volume 5, § 16.55, page 255; 62 C. J. S., Municipal Corporations, § 454 b, pages 874 *et seq.* There is, however, so much confusion on the subject that it is impractical to attempt to reconcile the decisions or to make any distinction between them other than setting out the facts in the particular case, the peculiar law involved, and the reason for the conclusion of the court in that case. So variant are the conditions under which the question arises that each case must be settled on the facts of that particular case.

The city of Portsmouth owns and operates the waterworks system. As a general rule, a municipality acts and contracts in connection with the construction or operation of its municipal utility in its proprietary or individual capacity rather than in its legislative or governmental capacity, and is governed, for the most part, by the same rules that control a private individual or business corporation. *Light* v. *City of Danville,* 168 Va. 181, 190 S. E. 276; *Etheredge* v. *Norfolk,* 148 Va. 795, 802, 139 S. E. 508; *Clark* v. *Scheld,* 253 N. C. 732, 117 S. E. 2d 838, 841; McQuillin, Municipal Corporations, 3rd ed., § 35.27, pages 636, 638 and § 35.35, pages 678 *et seq.*

The successful operation of a public utility is a business proposition involving the exercise of discretion and good judgment in management. Expenses incident and essential to proper operation are necessarily based on the cost of labor, material and other factors at the time the services are rendered. They are of such a fluctuating nature, due to economic and other temporary conditions, as to make it impractical, if not impossible, for the general public to appraise them in the absence of specific data, facts and information necessary to

arrive at a fair and accurate judgment upon the subject. The changing expense factor goes to the very heart of the operation. This is emphasized by the difference in the charges set out in the original ordinance and in those presented in evidence. City code, § 24-55, [1951] in force at the time of the institution of this proceeding, provided charges for water service connections ranging from $5.00 to $25.00 within the city and from $10.00 to $50.00 without the city.

While the establishment of the city-owned water system may have been in pursuance of a broad public policy and, therefore, a legislative matter, the receipts and expenses incidental to its maintenance and management are executive or administrative matters. It is clear that the provisions of the proposed ordinance of the electors are merely temporary in operation and effect. The ordinance does not propose to make a new law; it is one executing a law already in existence, merely changing an expense factor in the maintenance of a public utility. It pursues no new policy. It pursues a plan already adopted by the city council. Judged by these tests, it is administrative rather than legislative.

It must be assumed that the General Assembly was familiar with the general rule that initiative and referendum provisions apply only to acts which are legislative in nature and not to those which are of an administrative or executive character. We do not think that it meant to provide a measure whereby local governments would be harassed and shackled in performing administrative and executive duties in connection with a commercial activity operated in a private or proprietary capacity.

The cases of *Prentis* v. *Atlantic Coast Line Co.*, [1908] 211 U. S. 210, 29 S. Ct. 67, 53 L. ed. 150 and *Bachmann* v. *Goodwin*, 121 W. Va. 303, 3 S. E. 2d 532 do not support the contention of the appellants.

In the *Prentis* case, the court did not deal with any question of initiative or referendum. The main question there was the constitutionality of an order of the Virginia State Corporation Commission fixing railway passenger rates, which were claimed to be confiscatory of the railroad's property and an infringement of the Fourteenth Amendment of the United States Constitution. Another question was the determination whether a State or Federal Court should first take jurisdiction.

In the *Bachmann* case, there was a mandamus proceeding to compel

the council of a city to submit a proposed ordinance to the people as to whether or not a housing authority should exist in that city. A majority of the West Virginia Court held that the question was a matter of broad public policy upon which the voters had a right to speak, and, therefore, the proposed ordinance was legislative in nature and purpose.

For the reasons stated, we are of opinion that no error has been shown in the ruling of the trial court, and the decree appealed from is affirmed.

*Affirmed.*