R.G. MOORE BUILDING CORPORATION

V.

COMMITTEE FOR THE REPEAL OF
ORDINANCE R(C)-88-13, ET AL.

Record No. 890686

April 20, 1990

Present: All the Justices

*Gregory A. Giordano (Shuttleworth, Ruloff, Giordano & Kahle*, on brief), for appellant.

*Ray W. King (Tavss, Fletcher & Earley*, on brief), for appellee Committee for Repeal of Ordinance R(C)-88-13.

*Kathleen A. Dooley, Assistant City Attorney (Ronald S. Hallman, City Attorney*, on brief), for appellees Electoral Board of the City of Chesapeake and the City of Chesapeake.

No brief or argument for appellee State Board of Elections.

JUSTICE COMPTON delivered the opinion of the Court.

In this land use controversy, we consider the applicability and validity, vis-a-vis state and local zoning laws, of a municipal charter provision subjecting city ordinances to a referendum.

Appellant R. G. Moore Building Corporation owns approximately 691 acres of real estate in the City of Chesapeake. In February 1988, the landowner filed an application with the City for the rezoning of the tract from an agricultural category to single-family residential and conservation categories. Following a public hearing, the local planning commission recommended to the Chesapeake City Council that the application be denied. In October 1988, following a public hearing before the City Council, it approved the rezoning application in Ordinance R(C)-88-13.

Shortly after approval of the ordinance, several individuals joined as the Committee for the Repeal of Ordinance R(C)-88-13 and mounted a petition drive pursuant to § 3.07 of the City Charter against the rezoning ordinance. That section of the Charter provides:

**"Sec. 3.07. Ordinances.**

No ordinance, unless it be an emergency measure as herein defined, or the annual appropriation ordinance, shall

become effective until thirty (30) days after its final passage. If a petition signed by at least fifteen (15) per cent of the number of qualified voters voting in the last preceding presidential election is filed with the city clerk within thirty (30) days, requesting that such ordinance be repealed or amended as stated in the petition, such ordinance shall not become effective until the steps provided for herein shall have been taken. Such petition shall state the names and addresses of at least five (5) electors who shall constitute a committee to represent the petitioners. If the council shall not have amended or repealed the ordinance as requested within thirty (30) days after the filing of such petition, the city clerk shall upon request of a majority of the committee present such petition to the judge of the circuit court who shall order a referendum for the purpose of submitting the ordinance to the qualified voters of the city in the manner provided by law [for] special elections. If the ordinance is approved by a majority of the qualified voters voting in such referendum, it shall become effective upon the certification of the result. Ordinances passed as emergency measures providing for any work certified by the city manager to be immediately necessary to protect public property or health from imminent danger or to protect the city from imminent loss or liability, shall not be subject to referendum, and the certificate of the city manager in any such case shall be conclusive. All other ordinances passed as emergency measures shall be subject to the referendum as other ordinances. No appropriation ordinance shall be subject to the referendum."

In November 1988, the Committee filed with the City Clerk a valid petition calling for the subject property to be returned to its former zoning status. Subsequently, the City Council voted not to repeal or amend the October 1988 ordinance. Upon the Committee's request, pursuant to the Charter, the City Clerk forwarded its petition to the trial court. The court entered a decree of referendum which, after amendment, scheduled a special election for March 7, 1989.

In December 1988, the landowner filed a petition for declaratory judgment naming as respondents, after amendment, the Committee, the Electoral Board of the City of Chesapeake, the State Board of Elections, and the City of Chesapeake. The land-

owner asked the court to declare that the referendum provisions of Charter § 3.07 have no application to rezoning ordinances, that the provisions otherwise are void because in violation of state law and of constitutionally protected rights, and that the court enjoin the Committee from proceeding with its petition and holding the referendum.

Subsequently, the two petitions were consolidated, and the trial court held a merits hearing on February 8, 1989. Upon consideration of the evidence and argument of counsel, the trial court ruled against the landowner in a written opinion dated February 14, 1989. Subsequently, the trial court entered a final decree ruling that Charter § 3.07 "is specifically applicable to Ordinance R(C)-88-13." Also, the court denied the landowner's motion to enjoin the referendum.

The referendum by special election was held as scheduled, and the ordinance was not approved by the voters. Consequently, pursuant to § 3.07, the rezoning ordinance did not become effective.

We awarded the landowner this appeal to the March 1989 final decree. The appellees are the Committee and the City of Chesapeake.

On appeal, the landowner contends, first, that the court below did not have jurisdiction to order a referendum because the procedure set forth in Charter § 3.07 does not apply to rezoning ordinances. The landowner contends that zoning is a legislative power delegated by the General Assembly exclusively to the local governing bodies to be exercised only by duly enacted ordinances. Repeal of properly passed zoning ordinances, the landowner contends, violates that exclusive power.

Pointing to other provisions of Chesapeake's Charter, the landowner says that it provides for all zoning decisions to be made by City Council pursuant to state zoning statutes and pursuant to the local comprehensive plan. The enabling statutes, the landowner contends, "provide explicit procedures for the enactment of zoning ordinances"; such statutes "are founded on the principle that there must be uniform application of regulations, so that the discretion vested by an ordinance will not be used arbitrarily and so that the benefits of the discretion will not be bestowed on some and denied to others under like circumstances." Duly enacted zoning regulations cannot be amended by a referendum process which lacks explicit zoning procedures, the landowner argues.

Relying on case law from other jurisdictions, the landowner says that piecemeal attacks on zoning ordinances by referenda should be avoided. In sum, the landowner contends that because "a referendum in this instance would contravene legislative intent, result in 'sporadic attacks' on Chesapeake's comprehensive plan, and interrupt the uniformity, stability and predictability of zoning statutes, it is clear that the referendum provision of the Chesapeake Charter does not apply to zoning amendments." We do not agree.

A referendum is " 'an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest.' " *City of Eastlake* v. *Forest City Enterprises, Inc.*, 426 U.S. 668, 678 (1976) (quoting *Southern Alameda Spanish Speaking Org.* v. *City of Union City*, 424 F.2d 291, 294 (9th Cir. 1970)). The authority for referendum provisions stems from the concept of government that all power is acquired from the people. This concept is embodied in the Bill of Rights to the Constitution of Virginia which provides, "That all power is vested in, and consequently derived from, the people. . . ." Va. Const. art. I, § 2.

Contrary to the landowner's argument, the referendum provisions in issue do not involve an improper delegation of legislative power to the electorate. Rather, there is a valid reservation by the people of the traditional right of referendum.

In *City of Eastlake*, the Supreme Court ruled that an Ohio municipal charter provision requiring proposed land use changes to be ratified in a referendum did not constitute an unlawful delegation of legislative power. The Court stated: "A referendum cannot . . . be characterized as a delegation of power. Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create." 426 U.S. at 672. Continuing, the Court said: "In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature." *Id.* The Court stated that, like the town meeting, a tradition which still exists in some states, the referendum "is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies." *Id.* at 673. The Court noted: " 'This procedure ensures that *all the people* of a community will have a voice in a decision which may lead to large expenditures of

local governmental funds for increased public services. . . .' " *Id.* at 678-79 (quoting *James* v. *Valtierra,* 402 U.S. 137, 143 (1971)). The reservation of the power in *City of Eastlake* was set forth in the Ohio state constitution; in the present case the specific reservation of the power of referendum was accomplished through the Chesapeake charter provision, enacted by the General Assembly. Acts 1962, ch. 211.

■ Because there is no improper delegation of power, we turn to the charter provision. The plain language of § 3.07 could not be more explicit. It provides that, "No ordinance, unless it be an emergency measure . . . or the annual appropriation ordinance, shall become effective until thirty (30) days after its final passage." Because rezoning ordinances do not fall within either of the two exceptions in § 3.07, the referendum, by clear and unambiguous language, must apply to Ordinance R(C)-88-13.

■ The operation of the charter provision likewise is clear and unequivocal. The referendum held pursuant to § 3.07 technically does not "repeal" an ordinance; the ordinance never becomes effective. The referendum only serves to ratify or reject action taken by elected representatives which has not yet become effective. The original zoning on the landowner's property remains in place; the landowner is merely prevented from obtaining a new use for the land in a different zoning classification. The referendum provisions can never be used to rezone property, so the anticipated danger of "piecemeal" alterations to the City's comprehensive plan does not exist.

■ Additionally, the charter provision is compatible, and not in conflict, with state statutes affecting rezoning. Significantly, Code § 15.1-501, a part of Title 15.1, Chapter 11, dealing with land use, provides: "No provision in any municipal charter in conflict with this chapter shall be affected hereby." Also, zoning under the state statutory scheme as it relates to municipal ordinances is afforded no special treatment. Indeed, Code § 15.1-493(C), relating to preparation and adoption of zoning ordinances, provides: "Such ordinances shall be enacted in the same manner as all other ordinances."

Having rejected the landowner's so-called "statutory interpretation" argument, which it labelled at the bar as its "main argument," we will address briefly the landowner's remaining contentions. The landowner argues that rezoning by a city council is an administrative act and, because referendum provisions are appli-

cable only to legislative acts, the referendum provisions are inapplicable here. We do not agree.

In *Whitehead* v. *H and C Development Corp.*, 204 Va. 144, 129 S.E.2d 691 (1963), the Court stated:

> "The tests as to what are legislative or administrative acts have been stated in various cases. It has been said that those which relate to subjects of a permanent or general character are to be considered legislative; while those which are temporary in operation and effect are administrative. Acts constituting a declaration of public purpose or policy are generally classified as involving the legislative power. The crucial test is said to be whether a proposed ordinance is one making a new law, or one executing a law already in existence. If it merely pursues a plan already adopted by the legislative body itself, or may be properly classed among the executive powers, it is deemed to be administrative." *Id.* at 150, 129 S.E.2d at 695.

While we never expressly have decided in the context of a referendum that zoning ordinances are legislative acts, we have ruled that the act of a city council in adopting a comprehensive zoning ordinance, or a rezoning amendment, is an act that is legislative in character and not quasi-judicial. In *Blankenship* v. *City of Richmond*, 188 Va. 97, 49 S.E.2d 321 (1948), the Court said: "An ordinance that regulates or restricts the use of property regulates or restricts conduct with respect to that property and is purely legislative." *Id.* at 104, 49 S.E.2d at 324. Continuing, we stated: "It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character." *Id.* at 106, 49 S.E.2d at 325. *Accord Laird* v. *City of Danville*, 225 Va. 256, 261, 302 S.E.2d 21, 24 (1983). Accordingly, we now hold that rezoning ordinances are legislative acts, and not administrative, and thus are subject to referendum.

We also reject the landowner's constitutional arguments (1) that § 3.07 is invalid special legislation, (2) that the trial court had no jurisdiction to order the referendum because to do so violated the separation of powers doctrine, and (3) that applying

§ 3.07 to zoning matters violates due process rights and is fundamentally unfair.

The Chesapeake City Charter is special legislation authorized by the Constitution of Virginia. "The General Assembly may . . . provide by special act for the organization, government, and powers of any . . . city . . . ." Va. Const. art. VII, § 2. But the landowner points out that the state statutes give trial courts jurisdiction over zoning matters. *See* Code §§ 15.1-491(d), -493(G), and -499. It contends that because the city charter is special legislation, and because jurisdiction of zoning matters is vested in the circuit courts by statute, the charter cannot provide for any relief, by referendum or otherwise, that contravenes article IV, § 14 of the Constitution. It provides, as pertinent:

"The General Assembly shall confer on the courts power to grant divorces, change the names of persons, and direct the sales of estates belonging to infants and other persons under legal disabilities, and shall not, by special legislation, grant relief in these or other cases of which the courts or other tribunals may have jurisdiction."

The constitutional prohibitions against special laws are directed at "economic favoritism." *Benderson Development Co.* v. *Sciortino*, 236 Va. 136, 146, 372 S.E.2d 751, 756 (1988). The referendum provision of the Charter in § 3.07 is not the type of proscribed economic favoritism, nor does it "grant relief," as contemplated by the prohibition. *See City of Portsmouth* v. *Weiss*, 145 Va. 94, 133 S.E. 781 (1926) (special legislation prohibition of article IV does not invalidate municipal charter provision). Thus, it is not invalid special legislation.

On the separation of powers question, the landowner points out that, in Virginia, a court may not rezone property to specific categories. *See Board of Supervisors of Fairfax County* v. *Allman*, 215 Va. 434, 445-46, 211 S.E.2d 48, 55-56 (1975). The landowner contends that by ordering the referendum, the trial court "in essence" involved itself in the rezoning of the subject property, thereby encroaching on the legislative process in violation of the separation of powers doctrine. The direct answer to this notion is that the ministerial involvement of the trial court in the referendum procedure fails to establish a separation of powers violation.

The landowner's due process argument expands on the idea, previously addressed, that the referendum process has no detailed requirements to insure against arbitrary and capricious action by the voters. The landowner says that it is "fundamentally unfair" for it to be required "to weather the myriad procedural rules and hearings set out in the zoning code and then face the misinformed electorate without an opportunity to present its case."

 This question was decided in *City of Eastlake* when the Supreme Court ruled: "As a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a zoning ordinance." 426 U.S. at 679. And, under the circumstances of this case, we refuse to give any broader interpretation to the Due Process Clause of the Constitution of Virginia, Va. Const., art. I, § 11. As the Supreme Court reasoned, if the "substantive result of the referendum is arbitrary and capricious, bearing no relation to the police power," then the landowner still has remedies available. 426 U.S. at 676. Continuing, the Court said: " 'The sovereignty of the people is itself subject to those constitutional limitations which have been duly adopted and remain unrepealed.' " *Id.* at 676 (quoting *Hunter* v. *Erickson*, 393 U.S. 385, 392 (1969)). As the Supreme Court noted in ruling there was nothing "fundamentally unfair" in the referendum process to landowners, relief by variance is potentially available if hardship results when a property owner's land use changes are rejected by the voters. *City of Eastlake*, 426 U.S. at 679 n.13. Moreover, if the referendum result is itself unreasonable, court challenge is available. Consequently, nothing more is constitutionally required. *Id.* at 677.

Lastly, the landowner complains that the petition for "repeal" of the ordinance, signed by the citizens and submitted to the trial court, giving reasons why the zoning ordinance should be "repealed," contained misleading and inaccurate information. We agree with the trial judge who found "that to the degree any information put out to the public by the Committee was in fact inaccurate or misleading this amounted to no more than 'puffing' by advocates opposed to the rezoning."

For these reasons, the trial court's final decree will be

*Affirmed.*